# PHILIP PIPKIN, Adm'r. of JOHN KEETON, Dec'd. vs. JOHN H. CASEY.

The title of a *bona fide* purchaser of a slave from an administrator for a valuable consideration, and without notice of any fraud on the part of the administrator, is good.

## APPEAL FROM WASHINGTON CIRCUIT COURT.

FRISSELL for appellant.

1st. That the court erred in permitting the transcript of the record of the court of pleas and quarter sessions of Franklin county, Tennessee, to be read in evidence.

2nd. That the transcript of the record of the supreme court of Tennessee was improperly excluded. A record of a judgment is always evidence between parties and privies. The suit in Tennessee was brought by S. Keeton's heirs against Wm. Keeton and others. This suit was brought by Philip Pipkin, representing John Keeton's heirs, against John H. Casey, assignee of Wm. Keeton, as to a negro in controversy, among other things, in the suit in Tennessee.

Whatever would be the effect of that judgment in Tennessee as to Keeton's sale of the negroes, it would have the same effect here. McElmoyle vs. Cohen, 13 Peters, 312, 325-6; Vorhoes vs. Bank of U. States, 10 Pet. 449; Mills vs. Donyer, 7 Cranch, 481; Philips on Evidence, (Cowen and Hill) part 2, 895-6.

This doctrine holds as to foreign judgments of counts of competent jurisdiction. Destrehan vs. Scudder, 11 Mo. Rep. 490.

An administrator, by a sale of slaves, conveys no right except he proves the law in reference to such sales. Ventris et al. vs. Smith, 10 Peters, 161; and generally a person who sells a chattel can convey no other or greater title than he possesses himself. 1 John. Rep. 478, Wheelright vs. Depeyster.

COLE for appellee.

1st. The court committed no error in excluding the record in question from the jury. Because the proceedings was *inter alias acta*. The evidence was not pertinent to the issue, and, if admitted, would have misled the jury, and instead of a trial of property under Missouri law, we should have settled the question under the law of Tennessee. Kilburn vs. Woodsworth, 5 John. Rep. 37, Mayhen vs. Hiatcher, 5 Cow Rep. 34.

2nd. As a corollary from the first point, Casey could not be bound by this record, because he was no party to the suit, nor was William Keeton served with process. And as to the evidence of fraud practised by Wm. Keeton, in the sale and purchase of John Keeton's slaves in Tennessee, if it were so, that could not impair Casey's right to Calvin, unless he was a party to the fraud of which there was no evidence, nor could there be any. Hollingsworth vs. Barbour et al., 4 Peters Rep. 466; Wilson vs. Jackson, 10 Mo. Rep. 331.

3rd. Assuming the ground taken by appellant in his single and only exception, that the record was collateral evidence, and therefore should have gone to the jury; we say that being collateral, it was not, therefore, relevant evidence, if we do not mistake the import and meaning of the term used by the appellant, and therefore rightfully taken from the jury. (This will be apparent from mere inspection.)

4th. William Keeton, as adm'r. of John Keeton in Missouri, had all the interest in Calvin

that the deceased had in his lifetime; and a sale by him would vest the title to the property in the purchaser. Blac. Comm. 2 vol. 510, Co. Litt. 209; Ovefield vs. Bullitt, 1 M. Rep. 749; 7 M. Rep. 351; Griffith vs. Hozier, 2 Cond. Rep. 2.

5. The remedy of heirs, distributees, &c., in a case of waste by an administrator, is personal upon his official bond, and not against the purchasers of the property. 1 M. Rep. 749; 2 Bibb, 188, Henning vs. Conner; 2 J. J. Marshall, 203, Carrol vs. Connet.

6th. If William Keeton, adm'r., committed a fraud in the purchase of Calvin, this fraud cannot impair the title of John H. Casey, an innocent purchaser for a valuable consideration. Wineland vs. Coonce, 5 M. Rep. 296; 13 John. Rep. 471; 3 Bac. Ab. 307, 8, 9; Kean vs. Newell, 1 M. Rep. 754.

7th. If a fraud was committed by Wm. Keeton in Tennessee, the plaintiffs were *particeps criminis*, as the sale was made with their assent. (See the record) page 16, and at their instance in part.

8th. The case itself is stale, and barred by lapse of time. See Craig vs. Perry et al. 3 Mo. Rep. The possession of Keeton's being adverse, notoriously so.

Again : The suit in chancery in Tennessee, by the heirs of John Keeton, was commenced 19th February, 1839. The judgment below was reversed, and bill dismissed by the supreme court at Nashville on 3rd December, 1841. (See record, page 106.) See also page 43. Robert Lackey, husband of Martha Keeton, one of the heirs, receipt and discharge in full to Wm. Keeton, adm'r., date 30th March, 1841.

See also on page 42 the receipt of H. R. Bennett, the husband of Clarissa, another heir in full to Wm. Keeton, adm'r. date 17th November, 1839.

Again: See receipts on the records from all the heirs of John Keeton to Wm. Keeton, adm'r. of his estate, for their parts of the estate. The reason why I refer particularly to the receipts of Lackey & Bennett, is that the receipt of the first is after the dismissal of the suit in chancery in Tennessee, and the last during its pending, showing that they come perfectly cognizant of their rights and the relation in which all of them stood to Wm. Keeton.

The whole facts of the case being very full, entirely so I believe, as will appear clearly from the synopsis of the case by both the court of chancery and supreme court of Tennessee, with the exception of the bills of sale and receipts since supplied, it is requested with the utmost deference and respect on the part of appellee, that the supreme court would pass beyond the mere point of exception on the record, and extend their enquiries, and decision over the whole case as presented by the record. This course will save trouble and expense in other cases growing out of the same state of facts now pending in the circuit court of St. Francis and Jefferson counties. This request is not without a precedent; in the Mullanphy will case, Graham et al. vs. O'Fallon, it was done.

NAPTON, J., delivered the opinion of the court.

This was an action of detinue instituted by the public administrator of Jefferson county, who was directed by the probate court of that county to take charge of the estate of John Keeton unadministered.

The object of the suit was to recover a slave named Calvin, formerly the property of John Keeton deceased, but about the year 1844 or 5 sold by William Keeton, administrator of John Keeton to the defendant Casey.

The plaintiff, to sustain his action, produced his letters of administration and the order of the county court of Jefferson county and the let-

ters of W. Keeton upon John Keeton's estate, and the inventory of said estate, in which the slave in controversy was included, he also proved the present possession of the defendant, the former possession of John Keeton and the value of the slave.

The defendant relied upon the record of the proceedings of a probate court in Tennessee termed a court of pleas and quarter sessions. This record showed, that Wm. Keeton had taken out letters of administration in Tennessee upon the estate of John Keeton, that he had inventoried as part of this estate some twenty slaves, brought from Missouri, and among them the slave in controversy, that an order of this probate court was made for the sale of these slaves, that they were sold, and that their sales were reported to this court, who approved of them, and finally had a final settlement with said Keeton.

Receipts were also produced on the part of the defendant from several, perhaps all, of the heirs of John Keeton, to the administrator Wm. Keeton for their respective shares of that estate, and proof was given touching their formal execution. In the depositions taken for this latter purpose, an attempt was made on the cross examination of the witnesses to establish fraudulent conduct on the part of Wm. Keeton in this whole transaction. This proof was not admitted.

The defendant also proved that sometime in 1830 or 31 Wm. Keeton, who had removed those 20 slaves from Missouri as part of the estate of John Keeton in 1827 or 28, brought back to this State several of them, and among them the slave Calvin, thus he from this time treated them as his own and finally sold Calvin to the defendant for about $500.

A good deal of testimony, in the shape of depositions, was offered by the plaintiff to establish fraud on the part of W. Keeton in the management of the estate of John Keeton. This testimony was excluded.

The plaintiff also produced a record of the proceedings in the case of Lackey and others heirs of John Keeton vs. Wm. Keeton, Elizabeth Keeton and Bradford and Campbell, securities upon the Tennessee bond of W. Keeton. This was an appeal from the chancery court of Franklin county, Tennessee. to the supreme court of that State. A bill had been filed against W. Keeton, (who however was never served) against the widow of John Keeton, and Bradford and Campbell, securities of W. Keeton, to account for the estate of John Keeton alledged to have been fraudulently mismanaged by said Wm. Keeton. A decree in favor of the complainants was made by the chancellor, but the supreme court reversed the decree, so far as the slaves received from Missouri were concerned, holding that the securities of W. Keeton in Tennessee were

not responsible for those slaves, as they were originally reported to the probate court of Missouri, as part of John Keeton's estate there, and there administered upon.

This record was excluded, and the plaintiff took a non-suit.

We are unable to perceive any principal of law upon which this suit can be maintained, assuming that the facts of the case have been fully presented. The defendant is a bona fide purchaser of the slave from Wm. Keeton, for a valuable consideration, and without notice of any fraud. All the proof therefore designed to establish fraud upon the part of Wm. Keeton in his administration of the estate of John Keeton, is entirely irrelevant, such proof cannot affect the defendant's title.

Moreover, the record of the probate court of Tennessee shows a regular administration of this estate, an inventory of this very slave, and an order for his sale by that court; an actual sale, and a subsequent ratification of it by the court upon a final settlement of the estate. There seems to be no question of the jurisdiction of the court of pleas and quarter sessions over this matter, and it certainly cannot affect the rights of the defendant, that errors were committed by the court, or frauds committed by the administrator. If the court committed errors, there was a tribunal to revise and correct them; if the administrator committed frauds, he and his securities were responsible. But to attempt to follow this property in the hands of a bona fide purchaser, not even a purchaser directly at the sale of the estate, but secondarily from the individual who had purchased at these sales, is not sanctioned by any legal rules in accordance with the principles of equity.

We scarcely think it material, whether the record of the decision of the supreme court of Tennessee in the case of Lackey and others vs. Bradford and Campbell had been read or not. That decision certainly has no binding force in our courts. The parties are not the same as those now before this court, and the decision itself is merely upon a question of law, only collaterally involved in this case; undoubtedly it is an authority to which, as far as it is supported by reason and good sense and established principles, the courts here may refer. But it is no more than the decision of any other respectable tribunal upon the same question. I cannot pass by this decision, however, without indicating my entire dissent from the principles decided, if I have rightly apprehended them as these principles seem to be the basis of several suits brought by the heirs of John Keeton in this State, two of which are now before us, and several others depending below, I think it not improper to intimate the views of this court here.

The supreme court of Tennessee in this case of Lackey and others vs. Campbell and Bradford, refused to hold the securities in the bond given in that State by W. Keeton responsible for property received originally by Wm. Keeton, whilst administrator here but subsequently withdrawn by him from the jurisdiction of the probate court in this State, by the assent of that court, and reported to the probate court of Tennessee and there administered. After a learned disquisition upon the subject of domical and independant, primary and ancillary administrations, the court come to the conclusion that the Missouri administration was an independant one, and seems to place the irresponsibility of the Tennessee securities upon principles of international comity : They further declare that the securities in Tennessee ought not to be held responsible for this property administered upon in Missouri, because although passed over to the Tennessee administrator, it is not to be presumed that the securities ever contemplated a liability for a large amount of property, not within the jurisdiction of that State, and properly belonging to the primary or independant administration in Missouri. The question of domical and primary and ancillary administration I shall not examine, nor shall I undertake to question the propriety of the decision, so far as the Tennessee securities are concerned. This may be the law in Tennessee ; we do not understand it to be the law here. A bond under our statute requires the administrator faithfully to administer the estate of the deceased, account for, pay and deliver all money and property of said estate and perform all other things touching said administration required by law. It is not necessary that all the property of the deceased should be included in the first inventory, and of course he is only responsible for such property as actually comes into his possession. But our law provides for different inventories, it contemplates the possibility or probability of portions of the estate scattered in different counties or States ; and when this property does come into the hands of the administrator here ; when he does report its reception to the probate court, from whatever quarter of the globe it is received, it forms a part of the assets of that estate, and as such the administrator and his securities are responsible for its faithful administration. It is not material to this question, whether the administration be primary or ancillary that is a question which becomes important in determining what disposition the court having jurisdiction will order of an estate ; it is a question in which creditors may be interested, it is not perceived what bearing it has upon the responsibility of securities. No doubt, in the event of a large or unexpected accession to an estate from a foreign

administration, the probate court may think it prudent to require additional security—or the securities themselves may require additional co-securities. All these steps are contemplated by our statute and provided for, both to secure the heirs and to protect the securities themselves.

As we have before observed, the supreme court of Tennessee have declared the securities of an administrator there not responsible for property administered on in another State, and subsequently passed over to the administration there. This is the law in Tennessee and with this we have nothing to do. It is sufficient that the courts of that State have so decided it, but when the court of that State further intimates, that the responsibility for such maladministration rests upon the securities here, that is another question to be determined by the courts of this State, when it arises.

The record of this case to the supreme court of Tennessee is then entitled to no weight here in this case. It was properly excluded by the court. Even the decision in Tennessee did not pretend that purchasers of this property, sold under the orders of their probate court, and fraudulently, it may be, were responsible to the heirs or an administrator *de bonis non.*

Judgment affirmed.